## WARREN v. BOOTH.

FORMER OPINION IN THIS CASE, 51 Iowa, 215, ADHERED TO.

### FRIDAY, APRIL 23.

#### ON REHEARING.

ROTHROCK, J.—A rehearing was granted in this case upon the petition of appellant, and the questions involved have been elaborately reargued by the respective counsel of the parties.

In the preparation of the foregoing opinion, it was not thought necessary to set out the agreement of September 18, 1876. In view of the reargument and other considerations which we now think are of controlling importance in the determination of the case, we have thought it necessary to insert the agreement herein. The following is a copy thereof:

"JOHN A. BURNHAM, *et al.*,

*v.*

"THE CHICAGO, DUBUQUE & MINNESOTA R. R. COMPANY."

" JOHN M. DENNISON

*v.*

" THE CHICAGO, CLINTON & DUBUQUE R. R. COMPANY."

" This memorandum of an agreement made between James F. Joy of the one part, and the said defendants of the other part, witnesseth: That for the purposes of avoiding further expenses and delay of litigation between the above named parties in the said suits, and the earlier acquiring for the bond-holders the possession and control of the property involved in the litigation, to the end that there may be organized new corporations ·for its manage-ment, and for the improvement and completion of said roads, the said first party, on behalf of said bondholders, agrees to give the said defendants first above named sixty thousand dollars ($60,000) in bonds of the said com-panies, and to the said defendant second above named forty thousand dol-lars ($40,000) of the same kind of bonds, as and for a compromise of the said suits, to terminate the controversy involving the roads of the said com-panies, and to secure the quiet possession thereof to the said complainant's trustees for the bondholders, with the full and undisturbed right to manage, operate and improve the same, as the bondholders may think best for their interest.

" And the said second parties severally agree that the opposition to 'fore-closure sought in the said suits shall be withdrawn, and such pleadings and stipulations shall be filed in the said cause as will result in a decree of strict foreclosure in each of the suits as already drawn and agreed upon; on which the said defendants shall be barred of all equity of redemption unless the amount of said decrees, as found due, shall be paid within ninety days from the rendition and entry of said decrees. That the said bonds so to be paid shall, in the same manner as all other bonds, be converted into stock in the re-organization of said companies, or stand upon the same basis, whatever it may be, in such re-organization, as all other bonds, which said stock or

other property representing said bonds, subject to all proper charges for counsel fees and otherwise, it is understood shall be distributed among the stockholders of said defendants residing in Illinois and Iowa, except the Chicago, Burlington & Quincy Railroad Company, all other stockholders waiving the right to any portion of the same.

"And it is further agreed by the said second parties that all the stock of said companies except that held by the Chicago, Burlington & Quincy R. R. Company, and said eastern parties, shall be assigned in blank, the power of transfer upon each certificate being signed by each present holder, and delivered to such trustees as the stockholders may select, to be delivered to the said party of the first part, or to such party as he may designate when by the terms of this agreement they are to be so delivered; and the said first party agrees to collect and get together the said hundred bonds, and also hold them until such time as they shall be in like manner deliverable to the holders of such stock certificates in exchange therefor, as herein agreed; and it is further agreed, that when the said decrees shall become absolute, and the equity of redemption fully barred, the said party of the first part shall and will deliver the said bonds to the party selected to hold the said stock in exchange for the said certificates so authorized to be transferred upon the books of the said companies.

"The said decree to be entered during the coming month of October, or this contract to become void.

"And it is further agreed that the trustees, complainants, shall take possession of said roads as soon as by the terms of the decrees the receiver is required to deliver the same, and from that time shall not in the future again employ the same person in or about the management of the said roads, or either of them.

"In case it shall so happen that all of said stockholders in Iowa and Illinois, except the Chicago, Burlington & Quincy Railroad Company, shall not surrender their stock and place the certificates, with authority to transfer signed, with the party selected, and the said second parties cannot, therefore, carry out this agreement, then it shall be at the option of the said first party to take less than the whole for said $100,000 of said bonds, or rescind and declare void this agreement. This contract to have no force or effect as to one of the defendants, unless it be carried into effect by both, and in case it be not carried out, the rights of all parties are to be and remain the same as if this agreement had never been made. It is understood, also, that inasmuch as the said first party is acting for others as well as for himself, this agreement shall be submitted to Sidney Bartlett, Esq., and shall become binding on both parties only with his approval, or being notified by him. And that they shall be at once submitted to him and the result made known to the counsel who shall sign this on behalf of the said defendants.

Witness our signatures, this the 18th day of September, A. D. 1876.

J. F. Joy.

CHICAGO, DUBUQUE & MINNESOTA R. R. Co.,
By FOUKE & LYON, *its Attorneys.*
CHICAGO, CLINTON & DUBUQUE R. R. Co.,
By FOUKE & LYON. *its Attorney*.

It will be observed that this contract was made in the interest of the bond-holders, who were seeking foreclosures and possession of the railroads. The railroad companies bound themselves to withdraw all opposition to the actions, and a strict foreclosure was to be entered barring all equity of redemption. The $100,000 in bonds were to be given to the railroad companies to be distributed among certain of the stock-holders. The railroad companies agreed that all of the stock of said companies, except that held by the C., B. & Q. R. R. Co. and the eastern parties, should be assigned and delivered to Joy. It does not appear from the record what object there was in taking an assignment of the stock for the benefit of the bondholders. It would seem to be without value after a foreclosure of the mortgages and a reorganization of the companies. But perhaps that is not material. The contract in effect amounts to just this: The bondholders, in consideration of a compromise of the litigation, and the withdrawal of all opposition to the foreclosure, and the surrender of the stock, agreed to give to the said companies $100,000 in bonds to be distributed among the stockholders.

Now if we were in error, as is claimed, in stating in the foregoing opinion that if this agreement had taken effect counsel for appellant practically conceded that the bonds would have been the property of the railroad companies and liable to be appropriated by the creditors of the companies, we will correct such error by saying that the proposition ought to be conceded, because, as we understand, the case would then be in principle the same as *Railroad Company v. Howard*, 7 Wallace, 392. We need not set out the facts of that case here. An examination of it will demonstrate the correctness of our remark in regard to it. The defendant companies could not, in consideration of a compromise of the litigation, and a surrender of the property and franchises, and the equity of redemption, receive $100,000 in bonds to be distributed to its stockholders to the prejudice of its creditors. And the fact that the companies were to procure the stockholders to assign and transfer their certificates of stock could make no difference. The same fact existed in the case of *Railroad Company v. Howard*.

We will now proceed to examine the question whether this contract, although disapproved by Bartlett within a few days after it was signed, was abandoned by Joy, the representative of the bondholders, and the companies. That the decrees of foreclosure were entered as provided in said agreement is not denied, but it is claimed by appellant that as the written agreement was not ratified by Bartlett the decrees were entered under the oral agreement made by Fouke & Lyon with Joy. Certain it is, however, that all opposition to the foreclosure was withdrawn, decrees of strict foreclosure were entered, and the bondholders or their trustees went into possession of the roads. Now although Bartlett refused at the time to ratify the agreement of the 18th of September, and it is claimed Joy refused to carry out his oral agreement made with Fouke and Lyon, it seems to us a simple reading of the agreement of September 18th, and the agreement or declaration of trust of February 20, 1877, sufficiently shows that the parties intended by the latter to carry out the former. The latter recites that "Joy has received *under said agreement* of Sept. 18, 1876, nine-tenths of the certificates of stock in said river railroad companies." That it is "impractica-

ble for said Joy to distribute personally said bonds in accordance with *said agreement above referred to.* Now, therefore, said Joy, for the purpose of carrying out *said* agreement," etc. The writing proceeds and further recognizes the September agreement. It seems that when the time came to perform Joy had possession of the bonds and did perform the agreement notwithstanding Bartlett had refused to ratify it.

But it is insisted that the evidence introduced upon the trial shows that the September contract was abandoned, and that the final transaction was in fact had between the stockholders and Joy, and that it in effect was an exchange of the railroad stock and the effects of the construction companies for the $100,000 in bonds. And counsel for appellant has argued at length that the rule which excludes parol evidence to vary or contradict a written instrument has no application except in controversies between the parties to the instruments, and that in questions arising between third parties, or a third party and a party to the written contract, the rule does not apply.

Upon the re-examination of this case a majority of the court do not think it necessary to determine that question. The parol evidence was admitted over plaintiff's objection, and, whether considered by the court or not, we think the judgment should be affirmed because it finds ample support in the evidence. An examination of the parol evidence will show that Booth, the garnishee, had very little personal knowledge of the transaction. He made an answer, and then, upon being further advised, made another, which, upon its face shows that it was made largely from information derived from others. The only other witness examined in the case was the writer of the agreement between Joy and Booth. He testifies that the agreement of September 18, 1876, had nothing to do with the final contract, and that the parties did not mean what the last contract recites where it refers to and professes to be carrying out the September contract. He also testified that the parties did not mean what the language of the contract fairly imports. Now conceding that this evidence was competent between these parties, yet we think the court below correctly held that the last writing, with its unmistakable references to the former contract, was better evidence of what the parties intended than the recollection of a witness. It must be remembered that this is not an action triable anew in this court, and while it is the duty of courts to protect garnishees, they being parties who are disinterested in the subject of litigation, yet with that consideration before us we are clearly of the belief that the court below determined the questions involved correctly. Leaving out of view the question as to the right of the defendant to vary or explain these writings by parol, we reach the same conclusion arrived at in the former opinion, and the judgment of the court below must be

AFFIRMED.